**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                      Case No. 05-CR-20002

GARY THEUNICK, FREDERICK MACKINNON
and MAXWELL GARNETT,

      Defendants.
                                                       /

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' ORAL MOTIONS IN LIMINE**

      Before the court is a series of oral motions in limine presented by Defendants Gary Theunick, Frederick MacKinnon and Maxwell Garnett seeking to limit the introduction of certain evidence in the government's case. Defendants seek to prohibit witnesses from testifying that various aspects of the applications for NFA firearm transfer presented by Defendants in this case were "unusual" or "rare," or words to a similar effect. Defendants seek also to have the court instruct the jury that "need" for NFA firearms is not a part of the case and should be ignored.

      The proposition that a "need" for NFA firearms, in the most general sense of the word "need," must not play any role in this case is unwarranted and rejected.

      First, Defendants appear to have presented no pretrial motion in limine as to this point and only raised this issue orally during the current trial proceedings. In these motions, Defendants rely upon statements made during the June 26, 2007 hearing before Judge Friedman on the government's motion to quash certain subpoenas

designed to reveal the state of inventory of NFA firearms in the possession of various other federal and local law enforcement agencies. In the June 26, 2007 hearing the government made clear, as it has in subsequent discussion about the present motions in limine, that the indictment's essence relates to the falsity of the application process whereby what appeared to be official government agencies applying for NFA firearms was in reality individuals–the Defendants–associated with those agencies applying for such firearms for personal, rather than governmental, possession and use. Indeed, the government argued in the hearing that Theunick claimed an individual ownership interest in one or more of the firearms. The government argued that "the question is what was the true person in possession? Was it the Ogemaw County Sheriff's Department [sic - prosecuting attorney's office] or Rose City PD, or was it the defendants . . . [?]" (6/26/07 Hearing Tr. at 8-9.) The government argued that revealing the state of affairs with respect to the armament of the Oakland County Sheriff's Department or the Livonia PD, for example, would not shed light on the essence of the individual-possession-versus-governmental-possession proposition presented in this case.

The court questioned government counsel during the June 26, 2007 hearing, and asked, "are you going to argue whether or not . . . there was a need for these weapons or anything of that nature, or are you going to stick in your arguments to strictly the false statements . . . ?" (*Id.* at 10.) The government answered that "need is not going to be part of our case in chief, for example, we would not present the evidence of, say, other prosecutors' offices not having similar firearms." (*Id.*) The court confirmed, "you're not going to compare them to other communities," and the government agreed. (*Id.* at 11.)

Later in the hearing, counsel for Theunick raised a similar concern about the tape-recorded conversation with Theunick in which the government "focus[ed] on need for weapons, the manner in which they were possessed, maintained, stored, the purpose that was intended for them," (6/26/07 Hearing Tr. at 13), and the court replied that "the government has indicated that they don't intend to raise that in their case in chief . . . ," (*id* at 14).  In this discussion, counsel for Theunick and the court briefly expanded the scope and redirected the intent of the question the court had earlier posed to the government.  The earlier question focused on supposed governmental agency "need" for such firearms, or the lack of it, by comparison to other similar agencies.  In this later discussion. Theunick's counsel expanded that into the questions asked of defendant Theunick about any supposed individual "need" he may have harbored for such firearms, and various attributes of individual possession such as "the manner in which they were possessed, maintained, stored, the purpose that was intended for them." (*Id.* at 13.)  The proposition of individual rather than governmental possession remains the essence of the government's case, as stated clearly during the hearing.  The court, near the conclusion of the hearing, returned to the original issue discussed with the government, saying that "they don't intend to compare this prosecutor's office to other prosecutor's officers, Rose City's police department to other police departments, and so forth."  (*Id.* at 14.) On June 27, 2007, the court granted the government's motion to quash the subpoenas  in a simple written order, "for the reasons stated on the record."  (6/27/07 Order.)

This court agrees with the formulation of the proposition as finally stated by the court on the record; it is upon those conditions that the court ordered the motion to

3

quash be granted. The court said that information sought in the subpoenas, all of it relating to the state of armament of other departments, is simply not relevant to the question of individual possession. The court noted that "the government has indicated they don't intend to use *that kind of information* at least in their case in chief." (*Id.* at 15 (emphasis added).) The "kind of information" to which the court referred was exactly the state of affairs with respect to the NFA arsenals of other departments, or more specifically, the absence of the same.

The government did not at the hearing commit itself to avoid presentation of evidence touching upon the incidents of or proof of individual possession, nor did the court intend to prohibit such evidence. Proof of those matters is what the present motions in limine seek to do, and this court disagrees that the June 27, 2007 order precludes their admissibility.

Accordingly, consistent with the statements made by Judge Friedman on the record, there will be no evidence or argument of comparison of departments or agencies as to their state of armament permitted in the government's case in chief for the purpose of attempting to prove that there was no real "need" for the office of the Ogemaw County Prosecuting Attorney or the Rose City Police Department to acquire or possess NFA firearms.

There is, however, no restriction placed upon the government's ability to adduce evidence tending to prove actual personal possession, versus official governmental possession, of NFA firearms even if it includes or touches upon concepts such as allegations of the presence or absence of *personal* "need" for such firearms, allegations

of the "unusual," and therefore *personal*, nature of various transactions entered into, and the like. The question of *personal* possession being the essence of the allegations in the indictment in this case, evidence tending to show or disprove such possession will not be prohibited. It is possible, depending upon the precise nature of such evidence, that an explanatory or limiting instruction may be needed. The court leaves to counsel any such suggestion or the particular language that might be advisable in that regard.

In light of this ruling, Theunick's recorded interview is admissible. The court finds neither any reference to of comparison of other departments nor any improper focus upon or allegation of there being no governmental "need" for the NFA firearms. The focus, to the court, seems to be upon Theunick's *individual* alleged need or desire for his *personal* possession of such devices. Such evidence goes to the heart of the government's allegations and is not affected by Judge Friedman's statement on his decision on the government's motion to quash.[1]

IT IS SO ORDERED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

---

[1] Also, it is significant to the court that, in the wake of Judge Friedman's order, no subsequent motion, objection or other concern has been raised by defendant Theunick (or any other defendant) concerning the bifurcation of the Theunick trial, such bifurcation being required only because of the need to introduce the recorded conversation as evidence against Theunick alone. From this, the court draws the conclusion that defendant Theunick did not think that Judge Friedman in any way meant to exclude from evidence the substance of the statements made during that interview, but only the argument that, by comparison with other similar departments, there seemed to be no *official* "need."

Dated: August 22, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 22, 2007, by electronic and/or ordinary mail.

                                                s/Lisa G. Wagner
                                                Case Manager and Deputy Clerk
                                                (313) 234-5522