## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                              Case No. 05-CR-20002

GARY J. THEUNICK, FREDERICK
MACKINNON and MAXWELL GARNETT

       Defendants.

                                            /

### OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SET ASIDE THE JURY'S VERDICT AND ENTER A JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29

Pending before the court are Defendants Gary Theunick, Frederick MacKinnon and Maxwell Garnett's motions to set aside the jury's verdict and enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Defendants were charged in a multi-count indictment, which alleged various violations of federal law. After a jury trial, Defendants were each convicted of numerous counts of the First Superseding Indictment (the "Indictment"). Defendants now argue that there was insufficient evidence to support the jury's finding of guilt as to any of the counts and that a judgment of acquittal must be entered as to each of these counts. The Rule 29 motions have been fully briefed and, for the reasons stated below, the court will deny the motions.

## I. STANDARD

Upon motion, the court may set aside a jury verdict of guilty and "enter judgment of acquittal." Fed. R. Crim. P. 29(c).[1] "In reviewing challenges regarding the sufficiency of the evidence presented to the jury, [the court is] limited to ascertaining whether, viewing the evidence in the light most favorable to the government, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); citing *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). Moreover, "'[s]ubstantial and competent' circumstantial evidence by itself may support a verdict and need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (*quoting United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). Thus, "[a] defendant bringing such a challenge bears a 'very heavy burden.'" *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986)).

---

[1]MacKinnon and Garnett attempt to bring their respective motions under both subsection b and subsection c of Federal Rule of Civil Procedure 29. The Government objects, arguing that the motions are properly brought only under Rule 29(c) and that the court should consider the evidence presented at the close of all the evidence, not merely the evidence presented at the close of the Government's case. Because counsel for Garnett raised the Rule 29 issue at the close of the Government's case, and MacKinnon is deemed to have joined in that motion, the court is inclined to find that both MacKinnon and Garnett preserved their rights to have the court consider a motion for judgment of acquittal based on the evidence presented at the close of all the evidence, which they chose to bring alongside their Rule 29(c) motion for judgment of acquittal. Because the court will deny MacKinnon and Garnett's Rule 29 motions whether the court considers the evidence presented at the conclusion of the Government's case or at the conclusion of trial, the court need not rule on this issue.

## II.  DISCUSSION

### A.  Transfer

In their respective motions, Defendants contend that the court should set aside the jury's verdict of guilt because the evidence that was produced at trial was insufficient to find them guilty of the charges contained in the Indictment.  Theunick submits that "[t]he Government has failed to offer any evidence that Defendant Theunick made or caused to be made, or presented or caused to be presented, an application for transfer and registration (ATF Form 5) that was materially false or fraudulent" because Alcohol Tobacco and Firearms ("ATF") Officer Gary Schaible's trial testimony "clearly established that each Form 5 met the criteria for a tax exempt transfer and registration" and personal funds can be properly used to purchase machineguns and silencers (together "the firearms").  (Theunick's Mot. at ¶ 2(b).)  Garnett submits that he should be acquitted of the conspiracy count and charges relating to false entries on purchase and transfer applications because Schaible testified that the applications were properly completed and the Ogemaw County Prosecutor's Office (the "Prosecutor's Office") and the Rose City Policy Department (the "Police Department") were appropriate transferee entities.  (Garnett's Mot. at 2-3.)  Similarly, MacKinnon maintains that he should be acquitted of the charges relating to false entries on purchase and transfer applications because Schaible testified that the applications were properly completed and the Prosecutor's Office and the Police Department were appropriate transferee entities. (MacKinnon's Mot. Br. at 3-4).

The Government has never contended that the applications were unacceptable on their face; the Government's position is that the applications were completed with

fraudulent designs.  (Gov't Resp. at 2, 12 n.12.)  As the court previously stated in

denying Theunick's pre-trial motion to dismiss, the question is not the documentation's

facial validity, but instead the "genuineness of the representations" made in the

documentation and the identity of the "true owner."  (10/20/05 Hr'g Tr. at 33-34, 45-46.)

### B.  Ownership

Theunick claims that he was never the true owner because Schaible's testimony

established that each weapon was registered to either the Prosecutor's Office or the

Police Department and Theunick at all times properly possessed the firearms as an

employee of one of these two entities.  (Theunick's Mot. at 2(c).)   MacKinnon contends

that because a statutory exception permits employees of appropriate transferee entities

to properly possess the firearms, and because "there is no proof one way or the other

as to how Mr. MacKinnon possessed these firearms, there is no proof that the exception

does not apply and the Government has failed in its burden of proof with regards to this

issue."  (MacKinnon's Mot. Br. at 4.)  Moreover, Garnett submits that because "[t]here is

no definition or requirement in the form 5 transfer regulations that spell out what

authorization or control consists of . . . the conduct that has been demonstrated by the

governments [sic] proofs does not violate any NFA regulations."  (Garnett's Mot. at 3.)

These arguments miss the point of the Government's contention, and assume

that a firearm's "true owner" can be only the person or entity named on the application.

Moreover, many facts introduced at trial could have led a reasonable jury to conclude

that a fraudulent conspiracy aimed at the personal acquisition of the illicit firearms was

afoot and that Defendants violated NFA regulations.  These facts include, but are

certainly not limited to, the following: (1) the timing of the firearms purchases,

4

purportedly for the "official" use of the two lawyers who constituted the entire professional population of the Prosecuting Attorney's Office – MacKinnon and Theunick were, respectively, the elected prosecutor and the chief assistant prosecutor – and the subsequent transfer of the firearms to a small police department[2] headed by Garnett, which almost precisely coincided with MacKinnon's defeat in his effort to be re-elected as prosecutor; (2) Theunick, in transferring the firearms from the Prosecutor's Office to the Police Department, obtained a receipt for what he asserted was a personal donation of, ostensibly, *his* firearms; (3) the Defendants using their personal funds to purchase the firearms; (4) the firearms being maintained in the personal possession of MacKinnon and Theunick, rather than being simultaneously delivered to the Police Department along with the Form 5 documentation; (5) Theunick claiming to have been employed at the Police Department after he left the Prosecutor's Office, and regularly having checked out and maintained possession of various subject firearms during months where he logged no hours at the Police Department, indeed, even after his Police Department employment had terminated; and (6) the number and nature of these firearms being more consistent with use as devices maintained for personal use only rather than official Prosecutor's Office or Police Department equipment.

### C. Conspiracy

Finally, MacKinnon argues that he should be acquitted of the conspiracy charge because "there was no showing that the three individuals charged in this indictment

---

[2]In fact, to label the Rose City police department "small" is to overstate its size. With the exception of a coterie of unpaid volunteer "special officers," it was small almost to the point of vanishing.

agreed to anything illegal" and, "on several occasions, at least one if not more of the parties contacted the ATF to determine whether the steps that they were taking were appropriate." (MacKinnon's Mot. Br. at 4-5.) Similarly, Theunick submits that "[t]he Government has failed to offer any evidence that the Defendants . . . acted in concert to commit an illegal act, or to commit a legal act in an illegal manner." (*Id.* at ¶ 2(a).) Theunick argues that "the opposite conclusion is conclusively shown by all evidence presented, which established that any concerted action was to ensure compliance with all requirements of the National Firearms Act." (*Id.*)

Defendants' arguments are vacuous, and inadequate to sustain the high burden required. In fact, viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found that Defendants committed the illegal acts specified in the Indictment by acting in concert to make the application process *appear* to be in "compliance with all requirements of the National Firearms Act" when it was actually intended to result in the acquisition of the subject firearms for personal possession and use. This conspiracy "is evidenced, in part, by . . . a letter dated April 25, 2000 and signed by . . . Garnett. That letter relates to a transaction in which each of the three defendants obtained a .22 caliber Ruger handgun with an integral silence/barrel assembly and also a .22 caliber rifle silencer." (Gov't's Resp. at 7 (citing 4/25/00 Garnett Letter, Exhibit 148).)

Furthermore, after Garnett took the stand and testified in his own defense, a reasonable jury could have found that the following facts, when viewed in the light most favorable to the Government, supported Garnett's conviction and Theunick and MacKinnon's conspiracy count conviction: (1) Garnett permitted Theunick and

MacKinnon to possess the firearms because he claimed he had no safe place to store them even though Garnett admitted that he stored a number of firearms in his own concrete-reinforced, steel-doored, walk-in firearms vault built at his personal residence; (2) Garnett testified that the firearms would be sold to generate funds to buy a police car for the Police Department, but he never bought a police car and instead subsequently purchased additional firearms through the Police Department; (3) although Garnett claimed to have specifically informed city council and sought its approval for the firearms transfer, tapes of the city council meetings revealed that there was no such discussion, notification or request; and (4) Garnett's convincingly contradicted assertion that Michigan State Police Officer Robert Lesneski investigated Garnett's firearm possession in retaliation for Garnett's supposed complaint against Lesneski some years earlier for interfering with Garnett's police work and thereby causing or permitting, Garnett claimed, a civilian fatality.

For the reasons stated above, the court finds that there was sufficient evidence for a rational jury to find that the elements of each of the counts for which Defendants were found guilty were proven beyond a reasonable doubt both at the close of the Government's case and after the close of all the evidence.

### III. CONCLUSION

IT IS ORDERED that "Defendant Theunick's Motion to Set Aside Jury Verdict and Enter Verdict of Acquittal Pursuant to Federal Rules of Criminal Procedure, Rule 29" [Dkt. # 177] is DENIED.

IT IS FURTHER ORDERED that MacKinnon's "Motion for Judgment of Acquittal" [Dkt. # 178] is DENIED.

IT IS FURTHER ORDERED that Garnett's "Motion Per Federal Rules of Criminal Procedure 29(b) and Federal Rule of Criminal Procedure 29(c)" [Dkt. # 176] is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: January 9, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 9, 2008, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522